# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO. 17-20301-CIV-LENARD/GOODMAN

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

      Plaintiff,

v.

MATHIAS FRANCISCO SANDOVAL
HERRERA, et al.,

      Defendants.

_____/

## ORDER ON DEFENDANTS' MOTION TO
## COMPEL PRODUCTION FROM NON-PARTY LAW FIRM

Very few decisions are consequence-free events. The discovery dispute at issue here is no exception to this practical truism.

This Order concerns the legal consequences, if any, which arise when a major law firm conducting an internal corporate investigation into its client's financial and business activities produces what the parties here call "oral downloads" of witness interview notes and memoranda to the regulatory agency investigating its client. To be more specific, the primary issue addressed here (but there are other issues, as well) is whether that law firm waived work product protection when it voluntarily gave the Securities and Exchange Commission oral summaries of the work product notes and

memoranda its attorneys prepared about interviews of its client's executives and employees. The memoranda and notes summarize the relevant portions of the witness interviews (or at least what the attorney participating in the interview deemed to be relevant enough to include in these materials).

Because there is little or no substantive distinction for waiver purposes between the actual physical delivery of the work product notes and memoranda and reading or orally summarizing the same written material's meaningful substance to one's legal adversary, the Undersigned concludes that the Morgan Lewis & Bockius LLP law firm ("ML") waived work product protection and must provide to Defendants the interview notes and memoranda that were orally downloaded. To that extent, the Undersigned **grants** Defendants' motion to compel against ML. [ECF No. 52]. The waiver, however, is *limited* to only the witnesses whose interview notes and memoranda were orally provided, which is far less than all the witnesses ML interviewed.

In addition, the Undersigned rejects Defendants' additional argument that ML should produce to them *all* the witness-interview notes and memoranda on the ground that ML also provided all witness-interview notes and memoranda to its client's auditor, Deloitte & Touche ("Deloitte"). The Undersigned finds persuasive those cases holding that disclosure of work product information to an auditor does not generate a waiver.

Unlike the SEC, Deloitte is not the adversary of ML's client, General Cable Corp.

("GCC"), the publicly-traded company being investigated. As such, the Undersigned is not persuaded by Defendants' argument that the accounting firm is actually an adversary (based on the theory that Deloitte was worried that the SEC was also investigating its auditing services, and therefore had motive to suggest that GCC did not timely and fully provide accurate information for the financial statements that needed to be restated and which led to a hefty fine against GCC by the SEC). So the Undersigned **denies** that portion of the motion to compel.

Finally, the Undersigned also rejects the defense argument that additional work product material should be provided because Defendants have a substantial need for it. Under the present circumstances, that is an inadequate ground to compel production of additional work-product information, especially attorney work-product memoranda. The Undersigned therefore **denies** that portion of the motion to compel as well.

I.    **Procedural and Factual Background**

The SEC filed its lawsuit against Mathias Francisco Sandoval Herrera, Maria D. Cidre, and another defendant who entered into a consent judgment with the SEC shortly after the lawsuit was filed. [ECF Nos. 1; 24]. Herrera was the CEO and Cidre was the CFO of GCC's Latin American operation. The Complaint is based on allegations that Herrera and Cidre concealed the manipulation of accounting systems at the Brazilian operations of GCC, a global manufacturer of wire and cable products. The lawsuit alleges that Defendants hid from GCC's executive management material inventory

accounting errors at GCC's Brazilian subsidiary, including the overstatement of inventory.

According to the SEC's Complaint, this improper accounting of inventory caused GCC to overstate inventory and net income by millions of dollars and required the restatement of financial statements. The lawsuit alleges that this misconduct generated myriad violations of the federal securities laws.

The parties filed a joint written notice, consenting to the Undersigned's final handling of discovery disputes. [ECF No. 37]. Based on that, United States District Judge Joan A. Lenard referred to the Undersigned all discovery motions. [ECF No. 41]. The referral directed the parties to designate a discovery motion as a "Consent Motion." [ECF No. 41].

Defendants filed their motion to compel against ML, who filed an opposition response, and then Defendants filed a reply. [ECF Nos. 52; 59; 61]. The motion, the response, and the reply all failed to designate the motion as a "Consent Motion." Nevertheless, since it concerns discovery, the motion is surely a consent motion, which means that any challenge to this discovery Order would be to the Eleventh Circuit Court of Appeals (not the District Court). *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c). The motion is fully briefed[1] and is ripe for a ruling.

---

[1]    Defendants also filed a privileged e-mail string, but the parties later filed a joint notice asking the Court to not consider the attachment (which had been filed under

The origins of the specific discovery dispute date back to late 2012, when GCC retained ML to provide legal advice concerning accounting errors at the Brazilian subsidiary. ML conducted an internal investigation, which included interviewing dozens of GCC personnel. ML attorneys then prepared notes and memoranda about those interviews. According to Defendants, "many" of the witnesses were interviewed "live" in Brazil. [ECF No. 52, p .2].

After ML disclosed in November 2012 to the SEC that it was conducting an investigation of GCC's accounting errors, the SEC began its own investigation of the company. In doing so, it issued several requests to GCC. In response, GCC produced documents, including e-mail communications to and from Defendants and the persons who ML interviewed.

The SEC also asked for the investigative findings, and ML provided the SEC with information about its findings, including a presentation prepared for the SEC and information about specific witness interviews, which were provided orally. An April 15, 2013 PowerPoint presentation that ML made to the SEC contained, among other things, an events timeline, the names of witnesses whom ML had already interviewed, a breakdown of the transactions deemed to be at the heart of the accounting discrepancy, and the results of its investigation. This 28-page PowerPoint presentation is now in the

---

seal) because ML had inadvertently produced it to the SEC. [ECF Nos. 61-1; 70]. The Undersigned will therefore not consider that exhibit.

public record of this lawsuit, as Defendants filed it as an exhibit to their motion. [ECF No. 52-3]. The cover page of the ML-produced PowerPoint says "FOIA Confidential Treatment Request," however. [ECF No. 52-3, p. 1].

On October 29, 2013, ML attorneys met with SEC staff and provided oral downloads of 12 witness interviews.

In addition, during the investigation, Deloitte asked for information from ML about its investigative steps and findings, including information obtained through ML-conducted witness interviews. ML provided Deloitte with the information and says that it did so because it believed "Deloitte would keep it confidential, consistent with Deloitte's professional obligations to its client [GCC]." [ECF No. 59, p. 3]. Although ML provided the SEC with oral downloads of only 12 witness interviews, it provided Deloitte with information about all the interviews notes and memoranda. It appears as though this was accomplished through the reading (by an ML attorney) of memoranda and interview notes to Deloitte and generalized "access" to review interview notes selected by Deloitte's investigative team. [ECF No. 59, p. 8].

The SEC's investigation ultimately led to a Cease and Desist Order entered against GCC in December 2016, which required the payment of a $6.5 million civil monetary penalty. [ECF No. 52-2].

On August 9, 2017, defense counsel served ML with a Rule 45 subpoena in this lawsuit (filed by the SEC). [ECF No. 52-1]. ML made initial objections, and the parties

had discussions, which led to the narrowing of the issues. Specifically, Defendants' motion seeks to compel only the witness interview notes and memos (i.e., not the actual documents that ML provided to the SEC, "because those documents would presumably be produced [anyway] to the Defendants by the SEC"). [ECF No. 52, p. 7].

## II.    Applicable Legal Principles and Analysis

"[D]istrict courts are entitled to **broad discretion** in managing pretrial discovery matters." *Perez v. Miami-Dade Cty.*, 297 F.3d 1255, 1263 (11th Cir. 2002) (emphasis added). This discretion extends to rulings concerning the applicability of the work-product doctrine. *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1188 (11th Cir. 2013).

Federal law governs work-product assertions, regardless of whether they arise in diversity actions or federal question jurisdiction lawsuits. *See, e.g., Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 699–700 (S.D. Fla. 2007); *see also Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n. 10 (10th Cir. 1998) ("[u]nlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. Pr. 26(b)(3)"); *Bradt v. Smith*, 634 F.2d 796, 799 (5th Cir. 1981) (holding that "[t]he work-product immunity [is] a federal right [] embodied [] in the Federal Rules of Civil Procedure.").

The party claiming work product immunity (which is ML in this dispute) has the burden to establish the claimed protection. *Hinchee*, 741 F.3d at 1189. There is no dispute here that the notes and memoranda prepared by ML attorneys are in fact work product

material. Rather, the dispute is over the *waiver* of the work-product doctrine protection.

Although the party seeking work-product protection bears the initial burden for establishing that the documents are entitled to such protection, after that initial burden is met, the burden shifts to the party asserting waiver to show that the party claiming the privilege has waived its right to do so. *Mitsui Sumitomo Ins. Co. v. Carbel, LLC*, No. 09-21208-CIV, 2011 WL 2682958, at *3 (S.D. Fla. July 11, 2011). In the context of work product, the question is not, as in the case of the attorney-client privilege, *whether* confidential communications are disclosed, but *to whom* the disclosure is made -- because the protection is designed to protect an attorney's mental processes from discovery by *adverse* parties. *See generally Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 775 (D.C. Cir. 1978).

Work-product protection is waived when protected materials are disclosed in a way that "substantially increases the opportunity for potential **adversaries** to obtain the information." *Niagara Mohawk Power Corp. v. Stone & Webster Eng. Corp.*, 125 F.R.D. 578, 587 (N.D.N.Y. 1989) (emphasis added) (quoting *In re Grand Jury Subpoenas Dated Dec. 18, 1981 and Jan. 4, 1982,* 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982)); 8 Charles Alan Wright, Arthur R. Miller and Richard L. Marcus, *Federal Practice and Procedure,* § 2024 at 209–10 (1970).

As noted in *United States v. Gulf Oil Corporation*, 760 F.2d 292, 295 (Temp. Emer.

Ct. App. 1985):[2]

> [t]he purpose of the work product doctrine is to protect information against **opposing parties**, rather than against all others outside a particular confidential relationship, in order to encourage effective trial preparation[.] A disclosure made in the pursuit of such trial preparation, and not inconsistent with maintaining secrecy against **opponents,** should be allowed without waiver of the privilege.

760 F.2d 292, 295 (citations omitted) (emphasis added).

Thus, not *every* situation in which work-product materials are disclosed warrants a finding of waiver. Rather, the "*circumstances* surrounding the disclosure are key to determining whether an actual waiver of the work-product protection has occurred." *Stern v. O'Quinn,* 253 F.R.D. 663, 676 (S.D. Fla. 2008) (emphasis added).

Generally speaking, as noted above, work-product protection is waived when protected materials are "disclosed in a manner which is either inconsistent with maintaining secrecy against **opponents** or substantially increases the opportunity for a potential **adversary** to obtain the protected information." *Niagara,* 125 F.R.D. at 590 (citing *Gulf Oil,* 760 F.2d at 295 and other cases) (emphasis supplied); *Kallas v. Carnival Corp.,* No. 06-20115-CIV, 2008 WL 2222152, at *4 (S.D. Fla. May 27, 2008) (noting that a party waives otherwise-protected work-product materials "when the covered materials are used in a manner that is inconsistent with the protection") (internal quotations omitted); *see also Bank Brussels Lambert v. Chase Manhattan Bank, N.A.,* No. 93 CIV. 5298 LMM RLE, 1996 WL 944011, at *3 (S.D.N.Y. Dec. 19, 1996) ("Work product immunity is

---

[2] Citing *United States v. American Tel. & Tel. Co.,* 642 F.2d 1285 (D.C. Cir. 1980).

waived only if the party has voluntarily disclosed the work product in such a manner that it is likely to be revealed to his **adversary**.") (emphasis supplied); *Falise v. Am. Tobacco Co.,* 193 F.R.D. 73, 79 (E.D.N.Y. 2000) (waiver of work-product protection found only if disclosure substantially increases the opportunity for potential **adversaries** to obtain the information) (emphasis added); *Stern,* 253 F.R.D. at 676 (finding that work-product waiver occurs when disclosure occurs in a way which "substantially increases the opportunities for potential adversaries to obtain the information").

A.   *Witness Interview Material Orally Downloaded to the SEC*

The SEC was the adversary of ML's client, GCC. The SEC was investigating GCC for alleged misstatements in its financial reports submitted as a public company and eventually imposed a $6.5 million civil penalty against it. And it does not appear as though ML takes the position that the SEC was not an adversary, as it explains in its response that "Morgan Lewis does not contend that [GCC] and the SEC shared a common interest[.]" [ECF No. 59, p. 7].

So the Undersigned easily concludes that the disclosure to the SEC was one made to an adversary. *See In re Initial Pub. Offering Sec. Litig.,* 249 F.R.D. 457, 465–67 (S.D.N.Y. 2008) (finding that company waived work-product protection by disclosure of memoranda to the **SEC,** which was investigating the possibility of the company's wrongdoing, to limit liability for that wrongdoing); *United States v. Bergonzi*, 216 F.R.D. 487, 497–98 (N.D. Cal. 2003) (finding that the company waived work-product protection

by the disclosure to **SEC** because SEC had issued a Wells letter to the company); *see also In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179 (10th Cir. 2006) (collecting cases on waiver of work-product privilege in disclosures to investigating agencies); *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 306–07 (6th Cir. 2002) (not permitting selective waiver of work-product material to government agencies and noting that "[a]ttorney and client both know the material in question was prepared in anticipation of litigation; the subsequent decision on whether or not to 'show your hand' is quintessential litigation strategy.").

ML contends that no waiver occurred, however, because it never actually produced the notes and memoranda of the witness interviews to the SEC. ML argues that there is a meaningful distinction between the actual production of a witness interview note or memo and providing the same or similar information *orally*. The Undersigned is not convinced. *See S.E.C. v. Vitesse Semiconductor Corp.*, No. 10 CIV. 9239 JSR, 2011 WL 2899082, at *3 (S.D.N.Y. July 14, 2011) *(*"While it is undisputed that NuHo did not actually produce the notes themselves to the SEC, after reviewing the SEC's notes the Court found that NuHo effectively produced these notes to the SEC through its oral summaries."); *S.E.C. v. Berry*, No. C07-04431 RMW HRL, 2011 WL 825742, at *5–6 (N.D. Cal. Mar. 7, 2011) (finding waiver of privilege in interview memoranda for five witnesses where attorneys orally disclosed to the SEC facts contained in the interviews); *S.E.C. v. Roberts*, 254 F.R.D. 371, 377 (N.D. Cal. 2008) ("to the extent that Howrey orally

disclosed to the government factual information contained in any of the written material identified by Roberts, Howrey has waived the attorney-client and work product privileges with respect to that information.").[3]

ML does not contend that it provided only vague references of the witness notes and memoranda to the SEC, nor does it argue that only detail-free conclusions or general impressions were orally provided. To the contrary, it factually concedes that its attorneys provided oral downloads of the substance of the 12 witness interview notes and memos but legally relies on *B.M.I. Interior Yacht Refinishing, Inc. v. M/Y Claire*, No. 13-62676-CIV, 2015 WL 4316929 (S.D. Fla. July 15, 2015), a non-controlling admiralty case which the Undersigned does not deem helpful or applicable.

In *B.M.I.*, the Court held that a boat captain's ambiguous and perhaps only vague oral disclosure of the contents of a boat inspector's report, prepared at counsel's request, did not waive ***counsel***'s work-product protection because "an attorney has an independent interest in privacy of his or her work product, even when the client has waived its own claim[.]" *Id.* at *5. As an alternative basis for rejecting waiver, the Court noted that **no one could recall what portion of the report was disclosed** by the captain, so evidence was lacking as to what was waived. *Id.*

Moreover, the *B.M.I.* Court implicitly acknowledged the validity of the waiver approach used in *Vitesse Semiconductor* but distinguished it because the oral summaries

---

[3]    The Undersigned notes that these cases all involve the SEC, the same government agency at issue here.

provided there "were sufficiently detailed," as opposed to the "not very detailed" summary orally given by a boat captain. *Id.* at *6. But in this case, ML knowingly waived work-product protection in the interview notes and memoranda.

ML also argues that Defendants' claim -- that they seek to "level the playing field" -- is an argument which "rings hollow" because "the SEC does not have what the Defendants are seeking." [ECF No. 59, p. 7]. But that is an incomplete argument. Yes, it is true that the SEC does not have the *actual* witness notes and memoranda -- but it has the **functional equivalent** of them by receiving the oral summaries of the interview materials. The cases discussed above reject this crabbed theory. *See, e.g., Vitesse Semiconductor*, 2011 WL 2899082, at *3.

**B.**     *Other Material Provided to SEC*

Defendants argue that the PowerPoint presentations ML made for the SEC is a work-product waiver. ML disagrees, contending that the presentation does not contain work-product material. ML thus takes the position that the Court need not address the waiver issue because the material was never protected by work product in the first place. It says that the presentation's content concerned facts, not attorney mental processes. For example, simply listing the names of interviewees is not a work-product scenario.

ML relies on *In re General Motors LLC Ignition Switch Litigation*, in which the court denied the plaintiffs' motion to compel interview notes and memos where GM

produced to government agencies an attorney's report summarizing an internal investigation, and where the report contained numerous citations to many of the interviews conducted. 80 F. Supp. 3d 521, 533–34 (S.D.N.Y. 2015). The court found that GM had not offensively used the report or made a selective or misleading presentation unfair to its adversaries warranting a finding of waiver with respect to the interview memos and notes. *Id.* at 534.

The Undersigned has reviewed the entire PowerPoint presentation and agrees with ML's view that it is not protected by work-production immunity for two reasons. First, it was prepared specifically for the SEC. Second, although it mentions, in passing, the names of the interviewees, the substance of what the witnesses said was not provided.

## C.     *Other Disclosures to the SEC*

Defendants contend that ML made other oral disclosures of work-product information to the SEC, above and beyond the oral downloads of the 12 interviews. The Undersigned cannot reach any conclusions about further disclosures unless and until ML provides additional clarification about what was disclosed. Defendants contend that the ML attorneys took notes of the discussions they had with the SEC and perhaps with the Department of Justice. Defendants request that the Undersigned review *in camera* ML's attorneys' notes of an October 29, 2013 meeting. ML does not oppose this request. [ECF No. 59, p. 7 n. 3]. But the Undersigned is unsure about whether ML

attorneys met with the SEC and/or the Department of Justice on days other that October 29, 2013.

Therefore, ML shall, **within seven days from this Order**, file under seal a copy of all attorney notes discussing or reflecting what information was disclosed to the SEC or the Department of Justice during meetings (or otherwise). Notes concerning summaries of what ML attorneys told the SEC about the substance of information given by witnesses in interviews are particularly relevant and should be filed under seal. In addition to filing these attorney notes under seal, ML shall <u>deliver a courtesy copy to chambers</u> within the same deadline.

### D. *Material Produced to Deloitte*

After describing Defendants' motion concerning the purported waiver by production to Deloitte as based on "scant facts," ML then explains that it does not contest that it read interviews notes and memoranda to Deloitte for purposes of this motion. [ECF No. 59, p. 8]. According to its response memorandum, 38 witnesses were interviewed. [ECF No. 59, p. 8 n. 6]. ML's argument here is different from the argument it made for the materials provided to the SEC; it contends that even the actual physical production of work product to a company's auditors does not waive work-product protection because an independent or outside auditor typically shares a common interest with the corporation for purpose of the work product and waiver doctrines.

The Undersigned agrees with ML that documents shared with Deloitte are

protected from disclosure. *See United States v. Deloitte LLP*, 610 F.3d 129, 142 (D.C. Cir. 2010) (holding that documents disclosed to Deloitte by client did not waive work product protection); *In re Weatherford Int'l Sec. Litig.*, No. 11CIV1646LAKJCF, 2013 WL 12185082, at *5 (S.D.N.Y. Nov. 19, 2013) ("Ernst & Young functioned as Weatherford's outside auditor. In this circuit, disclosure to an outside auditor does not generally waive work product protection."); *see also Regions Fin. Corp. v. United States*, No. 2:06-CV-00895-RDP, 2008 WL 2139008, at *8 (N.D. Ala. May 8, 2008) (finding same, because "E & Y was an independent auditor [and] not a potential adversary of Regions."); *Gutter v. E.I. Dupont de Nemours & Co.*, No. 95-CV-2152, 1998 WL 2017926, at *5 (S.D. Fla. May 18, 1998) ("Transmittal of documents to a company's outside auditors does not waive the work product privilege because such a disclosure cannot be said to have posed a substantial danger at the time that the document would be disclosed to plaintiffs.") (internal quotations omitted).

In their motion, Defendants say that there is a "split" on the legal consequences arising from disclosures to a corporation's accountants or auditors but then concede that "the majority" of courts hold that auditing and accounting firms typically do share a common interest. [ECF No. 52, p. 10]. Nevertheless, they have crafted a theory to distinguish the precedent adopting the common-interest approach: they say that Deloitte "itself was on the SEC's radar and entered into a tolling agreement with the SEC regarding its own conduct." *Id.* Therefore, Defendants argue, Deloitte was a

"*potential* adversary" to GCC "because Deloitte was motivated to claim that GCC personnel had misled Deloitte regarding the accounting practices at GCC." *Id.* (emphasis added).

The Undersigned is not persuaded by this effort to treat Deloitte differently from those cases that hold that an outside auditor has a common interest with the corporation for work-product waiver issues. First, the SEC never brought an enforcement action against Deloitte concerning this investigation.

Second, the SEC's request for a tolling agreement with Deloitte occurred ten months after ML shared the results of its interviews with Deloitte.

Third, Defendants have not adequately established that ML or GCC knew at the time the witness interview materials were shared with Deloitte that the SEC was interested in a tolling agreement with Deloitte.

Fourth, Defendants have not cited any legal authority, binding or otherwise, to support the notion that a common interest disappears under factually analogous scenarios.

And fifth, even if Deloitte was a potential adversary on *that* issue, it still had a common interest for *other* purposes. *See generally Visual Scene, Inc. v. Pilkington Bros., PLC*, 508 So. 2d 437, 441, 443 (Fla. 3d DCA 1987) (noting that "common interests exception applies where the parties, although nominally aligned on the same side of the case, are antagonistic as to some issues, but united as to others" and holding that both

attorney-client privileged and work product-protected information exchanged between parties retained status under common interest doctrine even though the parties "in another respect" were "adversaries in the litigation and aligned as plaintiff and defendant respectively").

**E.** *Defendants' "Need" for the Work Product Materials*

Although this Order compels ML to produce to Defendants the witness interview notes and memoranda for the 12 witnesses flagged in Defendants' motion, Defendants also argue that they are entitled to *all* of the material because they have a substantial need for it.

According to Defendants' motion, ML has pledged to continue to assist **only** the SEC -- but not Defendants -- by making witnesses, including current and former GCC employees whom ML represents, available for further interviews and testimony in the United States, without regard for territorial limits. [ECF No. 52-2, pp. 8–9]. And Defendants similarly contend that, armed with ML's prior disclosures and ongoing cooperation, the SEC can cherry-pick which witnesses to call and which to avoid and ML's counsel can prepare those witnesses to testify with the benefit of a panoramic view of what all witnesses previously stated.

In the same vein, Defendants also say that the SEC is similarly advantaged with regard to the Deloitte witnesses by having access to the ML interviews, and therefore, having knowledge of what all witnesses previously stated. They note that many of the

witnesses are in Brazil, which means that they have no workable alternative to interview them other than letters rogatory, which they say is time-consuming and likely to be unhelpful (because, for example, they must submit the questions in advance and be only observers in a judge-conducted questioning procedure). And they express concern over the fact that the witnesses' memories have faded -- and that the interview notes and memoranda from a few years ago would be more accurate and helpful.

The Undersigned is not persuaded.

First, ML points out that Defendants have all of the 400,000-plus documents which GCC produced to the SEC, including contemporaneous e-mail communications among the witnesses at issue, which can be used to refresh recollections. Second, if the letters-rogatory process does in fact take longer than a traditional deposition, then Defendants can seek appropriate extensions of time. Third, and perhaps most importantly, Defendants are seeking the additional disclosure of attorney work product, which is entitled to heightened protection.

An attorney's notes and memoranda of interviews performed in the course of an internal investigation are "classic attorney work product." *See, e.g., In re Gen. Motors LLC as* 329 U.S. 495, 512 (1947) ("the privacy of an attorney's course of preparation is . . . essential to an orderly working of our system of legal procedure[.]"). Therefore, as the Supreme Court has explained, "Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the

attorney's mental processes[.]" *Upjohn Co. v. United States*, 449 U.S. 383, 399 (1981).

"Substantial need cannot be overcome simply with an argument that documents are relevant and will assist in bolstering a party's affirmative defenses." *Beaubrun v. GEICO Gen. Ins. Co.*, No. 16-24205-CIV, 2017 WL 1738117, at *5 (S.D. Fla. May 4, 2017). And courts must not allow parties to claim substantial need as a means to "short-cut" preparation of cases. *See Stern*, 253 F.R.D. at 686.

### F. *Conclusion*

ML waived work-product protection for the witnesses whose interview notes and memoranda its attorneys disclosed to the SEC in the so-called "oral downloads." Defendants advise that "at least twelve" interview memos were orally relayed [ECF No. 52, p. 8], so the Undersigned is using that number, as well. If it turns out that ML provided information to the SEC about other witness interviews besides the 12 already identified, then it shall disclose to Defendants the additional notes and memoranda. ML shall provide the notes and memoranda **within 7 days of this Order**.

In addition, ML shall, by the same deadline, file under seal (with a courtesy copy to chambers) for *in camera* review copies of the notes and memoranda reflecting any other work-product information its attorneys provided to the SEC and the DOJ about the employee interviews.

If the Court determines in its *in camera* review that additional work-product material was provided to the SEC and/or DOJ, then a follow-up order requiring

production under a waiver theory will be issued. If I conclude otherwise, then no further order will be entered.

DONE and ORDERED in Chambers, at Miami, Florida, on December 5, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Joan A. Lenard
All counsel of record